UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHEILA FINCH, :
:
        Plaintiff, :
:
v. : No. 3:10cv748 (MRK)
:
CITY OF STAMFORD, :
:
        Defendant. :

**MEMORANDUM OF DECISION**

This case stems from a sad event that occurred in the City of Stamford's jail on May 23, 2008. Early that morning, Stamford police officers arrested a visibly intoxicated James Avalone and brought him to police headquarters. At 8:45 a.m., Mr. Avalone was found dead in his cell, the victim of multiple drug toxicity.

This action was brought by Mr. Avalone's mother and next-of-kin, Plaintiff Sheila Finch. Ms. Finch claims that Defendant City of Stamford failed either to have a policy or to train its officers on how to address the medical needs of those arrested while under the influence of alcohol or drugs. This failure, she claims, makes the City liable under 42 U.S.C. § 1983 for its police officers' deliberate indifference to the medical needs of detainees, in violation of their substantive due process rights under Fourteenth Amendment. Additionally, Ms. Finch brings negligence and loss of consortium claims under Connecticut state law.

As the Court describes below, Ms. Finch has not presented enough evidence for a reasonable jury to find Stamford liable under § 1983. Because of this, Stamford's Motion for Summary Judgment [doc. # 27] is GRANTED as to Ms. Finch's federal claim. The Court declines to exercise supplemental jurisdiction over Ms. Finch's remaining state law claims.

1

**I.**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record, *see* Fed. R. Civ. P. 56(c), and it must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The moving party—here, the City of Stamford—bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so

slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

## II.

As the discovery conducted in this case was not extensive, relatively few facts are contained in the record before the Court. The parties are agreed that Mr. Avalone was arrested on May 23, 2008 for criminal trespass, breach of peace, interfering with police, and possession of narcotics. Stamford police officers had observed Mr. Avalone stumbling down the street with two companions; all appeared to be under the influence of alcohol or drugs. Police found a pill container in Mr. Avalone's pocket during a search conducted at the time of his arrest. The five pills inside were identified as morphine and methadone.

Mr. Avalone was still intoxicated when he was processed at Stamford's jail. The parties dispute whether officers completed a Prisoner Safety Screening form for Mr. Avalone during his intake, as Stamford's written procedures require. *Compare* Mot. for Summ. J. [doc. # 27] Ex. 2 (Stempien Aff.) at ¶ 9, *with* Br. in Opp. [doc. # 29-1] (Pl.'s Statement of Material Facts) ¶ 11. Regardless, sometime after 4:00 a.m., Mr. Avalone was placed alone in a cell which the jailer and desk sergeant were able to monitor with closed circuit cameras. At 8:45 a.m., when officers began the process of moving prisoners to court, Mr. Avalone was found unresponsive. Paramedics called to the scene pronounced Mr. Avalone dead at 8:58 a.m. A post mortem report attributed his death to multiple drug toxicity—though the report detected no morphine and only a slight amount of methadone.

**III.**

Ms. Finch's § 1983 claim against the City of Stamford requires her to show that Stamford was deliberately indifferent to the possibility that its officers would show deliberate indifference to a drunk or drugged inmate's medical needs. Complicating matters, "deliberate indifference" means two different things—and is evaluated under a different standard—in the two prongs of her claim. *See City of Canton v. Harris*, 489 U.S. 378, 388 n.8 (1989) ("[T]he proper standard for determining when a municipality will be liable under § 1983 for constitutional wrongs does not turn on any underlying culpability test that determines when such wrongs have occurred.").

First, Ms. Finch must prove that a constitutional violation in fact occurred. The violation Ms. Finch claims—which falls under the substantive due process clause of the Fourteenth Amendment—is that police officers showed deliberate indifference to Mr. Avalone's serious medical needs. The Second Circuit recently brought its test for deliberate indifference under the Fourteenth Amendment in line with the subjective tests that govern under the Fifth and Eighth Amendments. *See Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009). Now, pre-trial state detainees, pre-trial federal detainees, and convicted state and federal prisoners all share the same burden: showing that a "government-employed defendant disregarded a risk of harm to the plaintiff *of which the defendant was aware*." *Id.* at 71 (emphasis added).

The Court finds that Ms. Finch has raised a genuine factual dispute regarding officers' subjective awareness of Mr. Avalone's medical needs. The record includes officers' descriptions of Mr. Avalone as "extremely intoxicated," "stumbling back and forth in the middle of the road," and in possession of morphine and methadone. Mot. for Summ. J. [doc. #

27] Ex. 1 (Zach Report); *id.* Ex. 2 (Stempien Report). Further, the officers who first encountered Mr. Avalone and his companions advised them not to go outside "as it was a danger to themselves." *Id.* Ex. 1 (Zach Report). Whether or not Mr. Avalone was "barely conscious" in his mug shot, *cf.* Br. in Opp. [doc. # 29-1] (Pl.'s Statement of Material Facts) ¶ 6, his appearance and described behavior are sufficient to raise more than a "metaphysical doubt" as to whether officers were aware of the risks Mr. Avalone faced. *See Matsushita*, 475 U.S. at 586.

Ms. Finch has not sued Stamford's police officers, however; she has sued the City. And since § 1983 does not allow for *respondeat superior* liability, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978), Ms. Finch must prove more than the fact that the City of Stamford may have employed tortfeasors. She must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). The injury, in other words, must have been caused by action taken "pursuant to official municipal policy." *Monell*, 436 U.S. at 691.

Official municipal policy can take a number of forms. *See Hardy v. Town of Greenwich*, No. 3:06cv833 (MRK), 2008 WL 5117370, at *3-4 (D. Conn. Dec. 3, 2008). As the Supreme Court recently reiterated, it "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Even municipal sins of omission can count as policies, a least in certain "limited circumstances" involving failures to train. *Id.* In the Supreme Court's words, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise

to the level of an official government policy for purposes of § 1983." *Id.* (noting, however, that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").

Here, Ms. Finch has alleged that Stamford is liable not because of its official policies, but because of its *lack* of official policies regarding the handling of drunk or drugged arrestees. As stated, this claim fits uncomfortably within the Supreme Court's categories. Worse, Ms. Finch's counsel insisted at oral argument that this is not a failure-to-train case. The Plaintiff's own brief belies that argument, however, when it refers to "municipal-policy 'failure to train' cases like this one." Br. in Opp. [doc. # 29] at 3.

More importantly, Ms. Finch's lack-of-policy claim, if not strictly equivalent to a failure-to-train claim, certainly entails it. Every municipal policy promulgated in good faith involves some measure of training. The training might sometimes be minimal—as when a city sends out a memo instructing officers about a new policy on prisoner intake procedures—or more extensive—like the in-person instruction that is probably necessary regarding handgun or crowd control policies. Either way, a policy which officers had not been instructed to follow would not be one that would help the City avoid liability. If, as Ms. Finch claims, a policy about treating intoxicated or drugged arrestees was needed in Stamford, then it must also be the case that training in that policy was also needed. In sum, the Court cannot imagine a lack-of-policy claim under § 1983 that is not also, and more relevantly, a failure-to-train claim. Both ultimately focus the Court's attention on the same issue: whether the City should have done more to prevent a clearly foreseeable constitutional violation from happening.

Addressing that topic, the Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of person with whom the police come into contact." *City of Canton*, 489 U.S. at 388. The need for training must have been "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that . . . the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. Unlike the deliberate indifference standard discussed previously, the test for deliberate indifference in the failure-to-train context is objective rather than subjective. *Cf. Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (explaining that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official").

The Second Circuit has established three requirements for failure-to-train claims. First, "the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298.

Focusing on cases at the summary judgment stage, the Second Circuit has made clear that "a failure to train claim . . . requires evidence as to the city's training program and the way in which that program contributed to the violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 n.8 (2d Cir. 2004). A plaintiff who has completed discovery "is expected to proffer evidence from which a reasonable fact finder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." *Id.* at

130 n.10. In other words, a plaintiff needs to inquire during discovery into the ways the City's police officers are trained, and what policies and practices they routinely follow. She needs to investigate whether past incidents have suggested a need for different practices, or more stringent policies and training. And she must adduce evidence showing that, by ignoring this need, the city caused the injury in question—that things might have gone differently if the City had fostered different practices.

Ms. Finch has done none of this. The sole mention of deficient training or procedures in her Local Rule 56(a) Statement of Material Facts reads: "Although the Stamford Police Department has written procedures for anticipating and addressing the risk of inmate suicides, it has no such procedures for addressing the risks associated with intoxicated prisoners or prisoners who have ingested drugs associated with narcotics arrests." Br. in Opp. [doc. # 29-1] (Pl.'s Statement of Material Facts) ¶ 10. In support, Ms. Finch cites to two items in the record: the deposition of Sgt. Phelan of the Stamford Police Department, and an exhibit containing copies of three Stamford Police Department policies. *See id.* Ex. A at 13, 17-19; Ex. B. Neither of these adequately supports her claim. On one of the deposition pages cited by Ms. Finch, Sgt. Phelan testifies that "if an officer is aware that somebody ingested a large amount of drugs prior to coming in [to the jail] they wouldn't bring them in, they would have brought them to the hospital." *Id.* at 13. Nothing in the record contradicts this claim or suggests that police practice in Stamford has ever been otherwise. Sgt. Phelan's deposition also makes clear that written policies are not police officers' only guide when dealing with inmate health; their training and experience are also relevant. *See id.* Ex. A at 19. Finally, the written policies that Stamford does have include a provision requiring that "[i]n the event of a medical emergency, the Prisoner Processing and Detention Sergeant shall be notified immediately. Under no

8

circumstances will medical assistance/evaluation be withheld or delayed." *Id.* Ex. B (Procedure No. 150) at 4. Thus, the record indicates that both Stamford's written policy and unwritten practice was to give arrestees the medical attention they needed.

Ms. Finch has not offered evidence to suggest that Stamford's police officers were insufficiently trained at identifying arrestees' medical needs. Nor has she offered evidence that Stamford's practices have ever led to an injury or death other than Mr. Avalone's. Finally, since no medical expert was deposed, no evidence indicates that Mr. Avalone would have survived even if the City's policies had required police to take him immediately to the hospital. *Cf. Amnesty America*, 361 F.3d at 130 (denying summary judgment when a plaintiff "proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused" the injury alleged).

"Moreover," as the Second Circuit wrote in *Amnesty America v. Town of West Hartford*, Ms. Finch has "provided no evidence tending to rule out those causes . . . that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training . . . ." *Id*. In fact, Ms. Finch's allegation that a "Prisoner Safety Screening" checklist was not completed for Mr. Avalone during his intake, *see* Pl.'s Br. in Opp. [doc. # 29-1] (Statement of Material Facts) ¶ 11; *but see* Mot. for Summ. J. [doc. # 27] Ex. 2 (Stempien Aff.) at ¶ 9, actually undermines her claim that Stamford is liable under § 1983. *See Amnesty America*, 361 F.3d at 130. If Mr. Avalone's death really were attributable to the fact that police officers disregarded a city policy concerning prisoner health, Stamford's lack of prisoner health policies could hardly be the basis of liability on its part.

Given these many crucial omissions in the record, this Court must find as the Second Circuit did in *Amnesty America*: that "no reasonable factfinder could conclude" that the constitutional violation "occurred as a result of training deficiencies." *Id.* Since Stamford's § 1983 liability hinges on this conclusion, the Court GRANTS Stamford's Motion for Summary Judgment [doc. # 27] as to Ms. Finch's claim under the Fourteenth Amendment.

## IV.

"[I]f a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quotation marks omitted). As the Supreme Court has cautioned, "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).

In addition to her federal claim, Ms. Finch has alleged that Stamford should be held liable for its officers' negligence in failing to provide Mr. Avalone with needed medical treatment. *See* Conn. Gen. Stat. § 52-557n (holding political subdivisions liable for the "negligent acts and omissions" of "any employee, officer or agent . . . acting within the scope of his employment or official duties"). While discretionary governmental actions generally have immunity under Connecticut state law, *see id.* § 52-557n(a)(2)(B), this case might well fall within what courts in Connecticut describe as the "identifiable victim subject to imminent harm" exception to municipal immunity. *See Fleming v. City of Bridgeport*, 284 Conn. 502, 533 (2007); *Purzycki v. Town of Fairfield*, 244 Conn. 101, 108 (1998).

Whether it does or not, however, is a question best left to Connecticut's courts. For the sake of comity, justice, and judicial economy, *see Gibbs*, 383 U.S. at 726, this Court declines to exercise supplemental jurisdiction over Ms. Finch's negligence claim, as well as her claim for loss of consortium. *See* 28 U.S.C. § 1367(c)(3). Both are dismissed without prejudice to refiling in state court, should Ms. Finch choose to do so.

**The clerk is instructed to close this case.**

**IT IS SO ORDERED.**

 /s/  Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut: November 2, 2011.**